

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

March 15, 2023

**Via ECF**

The Honorable Judge Joan M. Azrack
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re: **Amaya v. AJR Restaurant & Pizzeria Corp., et al.**
          **22-CV-6470 (JMA)(JMW)**

Dear Judge Azrack:

    Our office represents Heber Amaya ("Plaintiff") and we submit this motion jointly with counsel for AJR Restaurant & Pizzeria Corp., Serefino Salmeron and Hilda Salmeron (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached at a Court-annexed mediation with all parties present on February 20, 2023.

    The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

    **I.**    **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

        **a.**    **The Settlement Amount**

    The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $110,000.00.

        **b.**    **Plaintiff's Position**

    Plaintiff commenced this lawsuit alleging that he was not paid proper overtime rates of pay in violation of the Fair Labor Standards Act (FLSA) and New York Labor Laws (NYLL). Plaintiff also alleged that he was entitled to spread of hours compensation when required to work in excess of ten hours per shift in violation of the NYLL.

Plaintiff alleged that he was employed by Defendants from in or around August 2018 until in or around August 2022 as a dishwasher, food preparer and pizza maker at Defendants' restaurant, located at 1187 Grand Ave., North Baldwin, NY 11510. Plaintiff further alleged that he was regularly required to work six (6) days per week and an average of seventy-three (73) hours per week. Plaintiff alleged that despite working in excess of forty (40) hours per week, he was paid a flat weekly salary of $600.00 or $700.00 per week during his employment. As such, Plaintiff alleged that his salary did not properly compensate him at time-and-a-half his calculated hourly rate for approximately thirty-three (33) hours of overtime per week. Plaintiff also claimed entitlement to spread of hours compensation for approximately six (6) shifts per week during his employment.

Based on the foregoing, Plaintiff initially alleged approximately $185,000.00 in unpaid wages. However, Plaintiff acknowledged factual disputes particularly as to the start date of his employment, whether he received paid time off for vacations, whether his alleged hours worked included meal breaks and whether he worked six (6) days throughout his entire employment. Accounting for the risks associated with these disputes, Plaintiff believed a realistic range of recovery for his unpaid wages was around $125,000.00 to $150,000.00.

Although Plaintiff was confident that he could prevail on all of his claims should this matter have proceeded to trial, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture avoids the inherent risks and costs of litigation and allows Plaintiff to recover a substantial amount of his alleged unpaid wages claim in the near future as opposed to the uncertainty of recovery at a much later date in the future.  Lastly, Plaintiff considered the factual disputes as to the dates of his employment and hours worked as well as Defendants' financial position. Based on all of the above, Plaintiff believes that the settlement is a fair and reasonable resolution as to his wage claims.

### c. Defendants' Position

**Plaintiff's Period of Employment/Holidays & Vacations**

Plaintiff did not work at the Restaurant for the period alleged. Instead, Plaintiff worked from approximately December 9, 2018 to August 6, 2022. This is supported by the Restaurant's payroll journals which indicate the total weekly wages paid to each employee.

In addition, Plaintiff did not work a full schedule every single week during his period of employment. For instance, he was paid at least one (1) week of vacation. The Restaurant was closed for four (4) holidays per year, for which employees were paid (i.e. Easter, 4th of July, Thanksgiving and Christmas).

Accordingly, Defendants' potential liability was overstated by close to a five (5) month difference, along with adjustments for paid for vacations and holidays. Notwithstanding, Plaintiff otherwise overstated his claims for the reasons set forth below.

### **Plaintiff Did Not Work The Hours Alleged**

Plaintiff's damage computations are based on the underlying assumption that he worked an average of 73 hours per week (e.g. 10 a.m. to 10 p.m., 5 days per week and 10 a.m. to 11 p.m. 1 day per week, all without any breaks). However, such claims do not align with reality.

Plaintiff generally worked a six (6) day schedule of approximately eleven (11) hours per day (i.e. 12 hour shifts less a 1 hour break). However, as noted in the Restaurant's payroll journals, he sometimes worked fewer days and/or half days (which is reflected in his pay).

There were certain time frames that Plaintiff worked less days per week as well. For example, during the Covid-19 Pandemic, Plaintiff was not required to work six (6) days per week. From March through September 2020, he generally worked four (4) days/forty-four (44) hours per week. From the last week in September 2020 through December 2020 and during 2022, Plaintiff generally worked five (5) days/fifty-five (55) hours per week.

Defendants defenses on hours worked can be supported by employee testimony and their payroll journal to support their defenses on days/hours worked.[1]

### **Plaintiff's Rate of Pay**

Plaintiff was not paid a set weekly salary as he alleges, nor did his total weekly pay equal the amounts alleged. Instead, Plaintiff was paid a rate of pay based on his regular schedule. However, his total weekly pay often fluctuated if Plaintiff's hours worked deviated from his regular schedule.

In support of their position, Defendants produced their payroll journals. Such journals show fluctuations in Plaintiff's pay, including additional pay when he worked over and above his regular schedule and/or deductions in pay when he worked less than his regular schedule.[2]

---

[1] The Restaurant's pay journals establish when the employees worked by listing their name and noting if their schedule ever deviated from their regular hours (e.g. ½ day, full day etc.). This method of recording time worked is permitted because the FLSA does not require any specific form or time-keeping system to track employee hours. See 29 C.F.R. § 516.1(a). The United States Department of Labor's ("Department") regulations permit records to be maintained in any form (e.g., on paper, on microfilm, or on a computer). 29 C.F.R. § 516.1. In fact, the Department acknowledges that an employer may use symbols, such as a checkmark, instead of showing the regular hours worked, if the record also provides a key to the symbols used. Use of time clocks is not required. U.S. DEP'T OF LABOR, WAGE & HOUR DIV., FIELD OPERATIONS HANDBOOK § 30a05a (Dec. 9, 1988). Courts have held that as long as the system properly and accurately measures employee hours, it conforms with the FLSA. See, e.g., Briceno v. USI Servs. Group, Inc., 2015 U.S. Dist. LEXIS 132185, 33-34 (E.D.N.Y. 2015); Zivali v. AT&T Mobility, LLC, 784 F. Supp. 2d 456, 461 (S.D.N.Y. 2011).

[2] To the extent Plaintiff argues that he was paid a day rate, his regular rate must be calculated by dividing all hours per day. For purposes of the FLSA, when an employee is "paid a flat sum for a day's work[,]" that employee's regular hourly rate is calculated by "totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112; see Calle v. Yoneles Enters., Inc., 2017 U.S. Dist. LEXIS 178724 at *12 (E.D.N.Y. 2017), adopted, 2018 U.S. Dist. LEXIS 5976 (E.D.N.Y. 2018).

### Hilda Was Not An Employer

The allegations in the Complaint fail to sufficiently allege that Hilda was an employer pursuant to the FLSA and NYLL. For an individual to qualify as an employer, she "must possess control over a company's actual operations in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013). The "economic reality" test to determine whether an individual is an employer considers whether that person "(1) had the power to hire and fire the employee[], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984). "Mere boilerplate allegations that an individual meets the various prongs of the economic reality test" are "insufficient" to survive dismissal. Diaz v. Consortium for Worker Educ., Inc., 2010 U.S. Dist. LEXIS 107722, *4 (S.D.N.Y. 2010).

In this matter, Plaintiff merely alleges in a boilerplate and conclusory fashion that Hilda, along with her husband Seferino, were his employers. (Dkt. No. 1, ¶¶ 9-17). Plaintiff provides no factual details related to the elements of the economic realities test. Such anemic allegations, without more, do not set forth any factual basis to satisfy the relevant pleading standard.

Plaintiff cannot otherwise truthfully allege that Hilda was an employer. Instead, she is the wife of the Restaurant's owner and Plaintiff's employer, Seferino. Her irregular presence at the Restaurant cannot elevate her to employer status since she did not hire, fire or discipline employees, had no role in setting pay rates or schedules and did not engage in recordkeeping.

Accordingly, any claims against Hilda in this matter would be subject to dismissal had the case gone forward.

### Defendants' Finances

The corporate Defendant has been significantly affected by the Covid-19 Pandemic and the aftermath of the current economy/inflation. Furthermore, the individual Defendants' finances are significantly limited. In fact, Hilda recently suffered a stroke and her financial capabilities are tied to that of her husband Seferino. Overall, they do not have ownership of any substantial assets (i.e. mortgaged home, etc.) and have no substantial bank assets. In the event that this litigation was not settled, there was a serious likelihood that this firm could withdraw as counsel and/or any judgment against Defendants will not be collectable. Defendants discussed bank account balances and financial documentation with the mediator at the mediation session held.

#### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a

litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $110,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a mediation session before a qualified and experienced Court-appointed mediator with all parties present. The parties had genuine, bona fide disputes over the dates of Plaintiff's employment, the hours worked by Plaintiff, the pay received by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

**II.     The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable**

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 2 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $110,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $72,531.00 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,204.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the cost of the Court-annexed mediation: $425.00
- the costs of service of the Summons and Complaint on all Defendants: $377.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($108,796.00), or $36,265.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $37,469.00.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $110,000.00
**Attorneys' Expenses:** $1,204.00
**Net Settlement Amount:** $108,796.00 ($110,000.00 - $1,204.00)
**Requested Attorneys' Fees:** $36,265.00 ($108,796.00 / 3)
**Total payable to Attorneys:** $37,469.00 ($36,265.00 + $1,204.00)
**Total payable to Plaintiff:** $72,531.00 ($110,000.00 - $37,469.00)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV. Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program. As such, we

respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

                                                                      Respectfully submitted,

                                                                        */s/ James O'Donnell*
                                                                        James O'Donnell, Esq.